[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the plaintiff wife, Sherry Kasowitz, against the defendant husband, Lewis Kasowitz, seeking a dissolution of their marriage. The parties have resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties were married on June 18, 1997 in Valley Stream, New York. They have been separated since February 1996 when the husband left the marital residence without notice to his wife or family. The parties have six children who have the following names and birth dates: Seth Kasowitz, January 21, 1982; Eric and Adam Kasowitz, June 20, 1983; Ian Kasowitz, November 21, 1984; and Alexis and Evan Kasowitz June 11, 1989. There are no other pending proceedings concerning the custody of the children. The parties' marriage has broken down irretrievably. There is no reasonable likelihood of reconciliation, and the court orders a dissolution of the marriage.
The court has carefully considered the statutory criteria for the granting of a dissolution of marriage, the awarding of custody, visitation, child support, alimony, and attorneys fees, and the dividing of the parties' assets and liabilities as applicable. The court makes the following findings and orders.
The wife is 45 years old and is good health. She has a Master's degree in educational psychology and works as a teacher in the Milford, Connecticut school system. She earns $640 gross and $444 net weekly from this employment. Her previous, CT Page 14 significant work experience was in the Greenwich public school system. Her financial statement indicates that the weekly living expenses for herself and the children ($1,734) significantly exceed her weekly net income of $444.
The husband is 44 years old. He has a Bachelors of Arts degree from the University New Haven. He suffers from colitis, which causes him intermittent pain and discomfort, but according to his testimony, he has been able to work regularly despite this problem. The evidence does not establish that this problem adversely affects his earning capacity to any significant degree. The husband's primary employment during most of the marriage has been in the insurance business, starting in 1978. Between 1993 and 1995 his earnings ranged from approximately $100,000 in 1993 to $70,000 in 1995. In 1996, he purchased a business called Underpass Recycling, paying $10,000 and assuming $60,000 in debt. This business was a financial failure and he closed the business in 1997. Since then, he has been self-employed in the scrap metal business, buying, selling and transporting scrap metal. He has experience in this business from previously working with family members in this area. To date, this scrap metal business has not been financially successful either. According to the husband's financial statement, he presently earns $280 gross and $173 net a week from this business. The evidence indicates that he is also receiving approximately $500 gross and $310 net a week in residual commissions from his previous insurance business. Thus, he is presently grossing about $35,000 a year.
The wife's primary asset is the marital residence on Wild Rose Drive in Orange, Connecticut, having a value of between $300,000 and $375,000 according to the parties' financial affidavits. Neither party offered any evidence to resolve their dispute concerning the value of this property, except the wife supported her claim that the property is worth $300,000 by testifying about the repairs that the property needs. During the pendency of this action, the husband transferred his interest in this property to his wife by quit-claim deed. The property is heavily liened. The property has two mortgages on it together having a total principal balance of $280,000. There are also federal and state income tax liens totaling approximately between $65,000 and $85,000 (the husband testified that the state tax lien was paid.) The husband also testified that the federal tax lien will be resolved and removed pursuant to additional tax returns that he intends to file. As part of his proposed orders he accepts the obligation to pay these taxes and remove the tax CT Page 15 liens. Both parties have other items of personal property as shown on their financial statements.
The husband's financial statement indicates that in addition to his mortgage debt of $280,000 he also has very large liabilities, totaling $186,000. The only debts specifically delineated on the wife's financial statement are the federal and state tax liens which she estimates to be $85,000. There is no dispute that these taxes are based on the husband's failure to pay taxes imposed on his earnings.
The wife testified that the marriage broke down because of the husband's grossly irresponsible and deceitful management of the family's finances. The husband essentially agreed that as the parties' financial situation worsened, their relationship also deteriorated. At the time of trial, the husband had not seen the children for about a year and he had not complied with the conditions of the court's pendente lite order authorizing him to have visitation. The husband testified that his guilt and hurt about the family's financial predicament caused him to stay away from the home and not see the children. The court finds that the husband caused the irretrievable breakdown of the parties' marriage.
 FINAL ORDERS
1. Dissolution of marriage. The parties' marriage is hereby dissolved.
2. Custody. The wife shall have legal and physical custody of the parties' minor children. She shall keep the husband informed about all major issues regarding their health, education and welfare.
3. Visitation. As sought by both parties, the court orders visitation consistent with the parties' agreement adopted and approved by the court on July 22, 1998. The parents shall retain the services of Southern Connecticut State University Marriage and Family Therapy Program for counseling and treatment directed to the restoration of the relationship between the husband and children. Both parents shall actively participate and encourage the children to participate in the program as deemed appropriate by the therapist. If recommended by the therapist, the husband shall participate in substance evaluation and treatment, and visitation may be modified or terminated in the reasonable CT Page 16 exercise of the mother's discretion for his failure to so participate. The husband shall pay for the costs associated with this counseling. The husband may move to modify these custody and visitation orders before or after the completion of the counseling sessions as allowed by statute and as governed by the best interests of the children. The parties shall mediate any disputes regarding custody or visitation with the Family Services Mediation Services before seeking judicial relief.
4. Alimony and Child Support.
(a) Child Support. The husband shall pay child support in the amount of $225 per week. These payments may be made by the husband making two payments of $487.50 a month consistent with the husband's receipt of his commission pay. As the husband's support obligation for each child ends, this child support may be modified in manner consistent with the child support guidelines. This child support of $225 a week is consistent with the child support guidelines, but as discussed below, the court concludes that an additional amount of support is warranted as a deviation from the child support guidelines based on the husband's earning capacity and the family's overall financial needs.
(b) Alimony. The husband shall pay alimony in the amount of $150 per week. This alimony shall terminate in 10 years, the death of either party, the wife's remarriage, or the wife's cohabitation as defined under Section 46b-86 of the General Statutes.
(c) Additional Support. Additionally, beginning six months from the date of this judgment or the week of July 1, 1999, the husband shall pay unallocated support to the wife in the amount of $250 per week. This unallocated amount shall be paid as long as the husband has a child support obligation under Section46b-84 of the General Statutes and shall be modifiable based upon a showing of a substantial change of circumstances as provided under the provisions of Section 46b-86.
(d) Arrearage. The court finds that the husband is in arrears in the payment of pendente lite support orders in the total amount of $15,600 (representing approximately $4,056.00 alimony and $11,544 child support). The court orders this $15,600 to be paid at the rate of $45 a week.
A substantial dispute between the parties is whether the CT Page 17 husband's child support and alimony obligations should be based on his present earnings or his earning capacity evidenced by the earnings he made before he left the insurance business. The court has carefully reviewed the parties' positions, with consideration of the applicable statutory criteria and with emphasis on both parties' earnings and earning capacities, and the family's overall financial needs. On one hand, the court must appreciate the husband's desire to pursue a field of endeavor of his choosing, but on the other hand, the court must require the husband to act reasonably to satisfy his legal support obligations. The husband has begun a new business involving scrap metal and has testified that he believes that this business will be financially lucrative. Only time will determine whether his expectations are accurate. The court's orders reflect a reduced support amount for a time period during which the husband may develop this business, but also reflects the fact that his family needs additional financial support which he is capable of providing. If the business does not develop consistently with his projections, than he must adjust and respond to meet these financial obligations as established by this judgment
5. Health insurance. The wife shall maintain health insurance for the minor children as available through her employment and each party shall be responsible for one half of the uncovered or unreimbursed medical, dental and similar expenses of the minor children.
6. Property divisions. The wife shall retain ownership of the real property known as 157 Wild Rose Drive, Orange, Connecticut and shall be responsible for all expenses relating to the property including the mortgages and taxes, except that the husband shall be responsible for any and all income tax liens on this property. The husband shall pay these income taxes and have these tax liens removed within 6 months. Within 6 months after the liens are removed, the wife shall make good faith efforts to refinance the mortgages on this property and remove the husband as an obligor of the mortgage debt. In consideration for the wife retaining full ownership interest in this property, the wife shall pay the husband $12,500 either when the property is sold or by June 1, 2008, whichever shall first occur. The husband may secure this $12,500 by filing a judgment lien on the property (without interest), but this judgement lien shall be subordinate to any mortgages placed on the property by the wife through refinancing or otherwise. The wife's obligation to refinance the mortgages on the property and to pay the $12,500 to the husband CT Page 18 shall automatically terminate if the husband fails to pay the taxes and have the tax liens removed within 6 months.
Except as the parties shall otherwise mutually agree or as otherwise explicitly ordered herein, the parties shall each retain all the assets as listed on their financial affidavits and in their possession.
7. Debt divisions. The parties shall be responsible for the debts listed on their financial affidavits and shall indemnify and hold each other harmless for all such liabilities, except as otherwise ordered herein. As previously ordered, the husband shall pay the income taxes secured as tax liens on 157 Wild Rose Drive, Orange, Connecticut, within six months. In addition to any other relief authorized by law, the husband failure to pay these taxes and have all tax liens removed within 6 months shall constitute a circumstance warranting a review and modification of these orders within the meaning of and pursuant to Section 46b-86
of the General Statutes upon motion by the wife.
Each party shall take such action as is required to remove the others name from any form of credit, loan banking or financial account which either may maintain.
8. Counsel fees and costs. The parties shall bear their own costs and fees.
So ordered.
This day of January 1999.
Stevens, J.